**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| **FINISAR CORPORATION,** | **HONORABLE PAUL D. BORMAN** |
| *Plaintiff*, | |
| **v.** | **Case No. 2:11-cv-15625-PDB-MKM** |
| **CHEETAH OMNI, LLC,** | |
| *Defendant*. | **JURY TRIAL DEMANDED** |

# CHEETAH OMNI, LLC'S BRIEF IN OPPOSITION TO FINISAR CORPORATION'S MOTION FOR INJUNCTION OF CHEETAH OMNI'S PENDING CLAIMS AGAINST FINISAR'S CUSTOMERS AND FOR LEAVE TO FILE A SUMMARY JUDGMENT MOTION



**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.  INTRODUCTION ......................................................................................................... 1

II. ARGUMENT ................................................................................................................ 4

      A.  The Court Should Not Enjoin Cheetah from Pursuing the Texas Litigation .......... 4

            1.  Under Federal Circuit Law, the "Customer Suit Exception" Does Not Apply ............................................................................................... 4

            2.  Finisar is Not the "True Defendant" in the Texas Litigation ..................... 7

            3.  ROADMs are the Products at Issue, not Finisar's WSSs .......................... 8

            4.  An Injunction in Michigan Would Undo the Progress Made in the Texas Litigation ..................................................................................... 9

            5.  Finisar has Not Met Its Burden to Show that an Injunction is Proper ................................................................................................... 10

      B.  Claim Construction and Summary Judgment Motion Will Run Afoul of the Texas Litigation ......................................................................................... 11

III. CONCLUSION .......................................................................................................... 13



# TABLE OF AUTHORITIES

**Cases**

*A.P.T., Inc. v. Quad Envtl. Techs. Corp.*,
    698 F.Supp. 718 (N.D.Ill.1988) ............................................................... 6

*Albie's Foods, Inc. v. Menusaver, Inc.*,
    170 F.Supp.2d 736 (E.D. Mich. 2001)..................................................... 3

*Codex Corp. v. Milgo Elec. Corp.*,
    553 F.2d 735 (1st Cir. 1977)................................................................... 6

*Data Treasury Corp. v. First Data Corp.*,
    243 F. Supp.2d 591 (N.D. Tex. 2003) .................................................... 10

*Delphi Corp. v. Automotive Techs. Int'l, Inc.*,
    2008 WL 294116 (E.D. Mich. 2008)..................................................... 5, 6

*eBay Inc. v. MercExchange, L.L.C.*,
    126 S.Ct. 1837 (2006)........................................................................... 9

*In re Laughlin Prods., Inc.*,
    265 F.Supp.2d 525 (E.D.Pa.2003) ....................................................... 6

*Kahn v. GM Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989)......................................................... 3, 5, 6

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990)............................................................. 8, 9

*Portfolio Technologies, Inc. v. Intellx, Inc.*,
    2005 WL 1189604 (W.D. Mich. May 19, 2005) .................................... 3

*Sanofi-Synthelabo v. Apotex, Inc.*,
    470 F.3d 1368 (Fed. Cir. 2006)............................................................. 9

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995)............................................................... 10

*Sun Pharm. Indus. Ltd. v. Eli Lilly & Co.*,
    2008 WL 1902111 (E.D. Mich. Apr. 30, 2008)...................................... 10



*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.,*
        676 F.Supp.2d 321 (D. Del. 2009) ...................................................................... 6

*Transformation, Inc. v. Gay Eng'g & Sales Co.,*
        336 F.Supp. 959 (S.D. Tex. 1971) ...................................................................... 7



## I.      INTRODUCTION

Under the "first-to-file" rule, Cheetah's suit in Texas, filed five months before the present case, should proceed.  Finisar invokes the "customer suit exception," but that exception is not automatic in patent cases.  It is left to the discretion of the district court, which must consider the particular circumstances of the case at issue.  There are several fundamental reasons present here why the exception does not apply.

Finisar's motion ignores (1) that Finisar's customers (not Finisar) are the <u>direct infringers</u> of asserted claims of the '661 and '479 patents, and (2) that Finisar's customers infringe <u>five other patents</u> asserted in that case.  As a result, the relief Finisar seeks will not serve to streamline litigation.  On the contrary, it will result in two parallel lawsuits in different districts involving some of the same patents and litigable issues.  But only one case – the Texas case – can resolve all issues.

The history of the Cheetah litigation provides context for the issues presented in Finisar's motion.  In June 2009, Cheetah filed suit against Verizon relating to, *inter alia*, certain "ROADM"[1] products including Finisar "LCoS"[2] optical switches (the "Verizon Litigation").  Following the jury's verdict in Cheetah's favor, Verizon settled with Cheetah.  As Finisar admits in its motion, its optical switches were squarely at issue in the Verizon Litigation.  (Dkt. #14 at 3.)  Finisar participated in that case as a non-party, but did not file a declaratory judgment action.  On the contrary, Finisar produced documents, provided deposition testimony, and submitted declarations relating to some of the same products at issue here.

---

[1]  ROADM stands for "Reconfigurable Optical Add/Drop Multiplexer."  It is a device for "switching" or "routing" optical signals in a fiber optic telecommunications network.
[2]  "LCoS" stands for "Liquid Crystal on Silicon."



In July 2011, Cheetah filed a follow-on suit in the Eastern District of Texas asserting seven other related Cheetah patents against six telecommunication companies that manufacture ROADMs (*i.e.*, Alcatel-Lucent, Ciena, Fujitsu, Tellabs, Nokia Siemens Networks, and FutureWei) (the "Texas Litigation"). Finisar supplies LCoS Wavelength Selective Switches ("WSSs") to several defendants in the Texas Litigation for use in their ROADMs. But Finisar is not the only WSS supplier to the Texas defendants. CoAdna and JDS Uniphase ("JDSU") also sell WSSs used in the ROADMs at issue in the Texas Litigation.

Of the seven Cheetah patents asserted in the Texas Litigation, only two relate to Finisar's WSSs. The other five patents cover ROADMs with CoAdna or JDSU WSSs. In addition, as in the Verizon Litigation, the Texas defendants are direct infringers of the asserted patents. Finisar, on the other hand, does not directly infringe all of the asserted patent claims.

In sum, the relief Finisar has requested (i) addresses only a fraction of the issues in the Texas Litigation, (ii) would prevent Cheetah from pursuing the direct infringers of the two patents at issue, and (iii) will result in duplicative litigation and risk inconsistent claim construction rulings on the two common Cheetah patents. Moreover, the defendants in the Texas case have not agreed to be bound by any judgment in the present case, a prerequisite for the "customer suit exaction" to apply. For these reasons, the Court should deny Finisar's request for an injunction.

Finisar also asks the Court for leave to file for summary judgment. The Court should not grant leave because as explained in Cheetah's co-pending motions and this Response: (1) the Court does not have jurisdiction over two of the patents-in-suit; (2) the Court should decline declaratory judgment jurisdiction over the two other patents under the first-to-file rule; (3) the Texas Litigation should proceed, not the present case; and (4) a motion for summary judgment of



non-infringement would be premature because infringement is a fact question and Finisar refuses

to provide fact discovery.

   For these reasons, the Court should deny Finisar's motion.



## II.    ARGUMENT

### A.    The Court Should Not Enjoin Cheetah from Pursuing the Texas Litigation

The "first-filed" rule is a "well-established doctrine among federal courts of equal rank."

*Albie's Foods, Inc. v. Menusaver, Inc*., 170 F.Supp.2d 736, 739 (E.D. Mich. 2001).  In *Portfolio*

*Technologies, Inc. v. Intellx, Inc.*, 2005 WL 1189604 (W.D. Mich. May 19, 2005), Senior Judge

Miles explained the "first-filed rule," as follows:

> The modern rule provides that when actions involving nearly identical parties and issues have been filed in two district courts, the court in which the first suit was filed should generally proceed to judgment. *Certified Restoration,* 511 F.3d at 551 (quoting *Zide Sport Shop of Ohio v. Ed Tobergte Assocs., Inc.,* 16 F. App"x 433, 437 (6th Cir.2001)); *see also Barber-Greene Co. v. Glaw-Knox Co.,* 239 F.2d 774, 778 (6th Cir.1957) ("When two suits have substantially the same purpose and the jurisdiction of the courts is concurrent, that one whose jurisdiction and process are first invoked by the filing of the bill is treated ... as authorized to proceed with the cause.") (quoting *Penn Gen. Cas. Co. v. Commonwealth of Pa.,* 294 U.S. 189, 196, 55 S.Ct. 386, 79 L.Ed. 850 (1935)).

*Portfolio*, 2005 WL 1189604 at **2 and 3.

Under the first-filed rule, this Court should defer to the Texas court and allow that case to

proceed.

### 1.    Under Federal Circuit Law, the "Customer Suit Exception" Does Not Apply

Citing *Kahn v. GM Corp.*, 889 F.2d 1078 (Fed. Cir. 1989), Finisar argues that its second-

file suit should proceed under the "customer suit exception."  Finisar ignores that *Kahn* supports

Cheetah, not Finisar, because the Federal Circuit <u>vacated</u> the district court's order staying the

first-filed customer suit because the district court exceeded its authority in staying the action.

In *Kahn*, the Federal Circuit vacated a stay obtained by Motorola in the second-filed

action.  The stay had been granted under the "customer suit exception" to prevent Kahn from



proceeding in his suit against General Motors in New York. *Id*. at 1079. Analyzing the law, the Federal Circuit explained that the customer suit exception applies only when "the second action would resolve <u>all</u> charges against the customers in the stayed suit, including liability for damages." *Id.* at 1081 (emphasis added). That cannot happen in the present case.

First, the Texas Litigation is not a simple action involving a single patent, a single defendant, or a single accused system. Seven different patents are asserted against ROADMs manufactured by six different defendants. The defendants' ROADMs use up to three different types of optical switches (*e.g.*, "MEMS," "LCoS" and "LC") – each of which is made by a different WSS maker – Finisar, JDSU, or CoAdna. Indeed, the ROADM makers each use WSSs made by more than one WSS maker, as shown in the chart below. Finisar's declaratory judgment action cannot possibly resolve all (or even a majority of) the infringement issues in the Texas action as required under Federal Circuit law.





As shown in the chart above, carving out the Finisar WSSs will not eliminate Cheetah's infringement allegations against any defendant in the Texas Action, as each defendant sells ROADM products with *other* WSSs (from JDSU or CoAdna) that infringe *other* asserted patents. Granting Finisar's motion will only complicate the Texas litigation by creating a second lawsuit in this District that will proceed in parallel with the Texas Litigation.

The Michigan action also cannot resolve "liability for damages" as is required for the "customer suit exception" to apply.  *Kahn*, 889 F.2d at 1081.  The Texas defendants are liable to Cheetah for making ROADMs that directly infringe the seven patents-in-suit.  Their liability is based on more than simply the WSSs, so the ROADMs, not the WSSs, are used to measure damages in the Texas Litigation.  In contrast, damages in the Michigan case would be limited to

6



Finisar's sales of WSSs and would not account for (1) the total value of the ROADMs or (2) the damages attributable to ROADMs having JDSU or CoAdna WSSs.

*Kahn* reveals another reason why Finisar cannot prevail. The Federal Circuit noted that the customer, General Motors, had not agreed to be bound by the outcome of the declaratory judgment action, a requirement if the customer suit exception is to apply. *Id.* at 1082. Here, Finisar presents no evidence that any defendant in the Texas Litigation has agreed to be bound by the outcome of Finisar's declaratory judgment case. For the same reasons the stay was improper in *Kahn*, it is improper here.

Finisar also cites *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) as a "similar" case in which an injunction was entered to stay the customer suit. (Dkt. #14 at 10-11.) In *Katz*, the Federal Circuit recognized that "***a primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other***." *Katz*, 909 F.2d at 1462-63 (emphasis added by Finisar, Dkt. #14 at 10.) As explained above, disposition of the Michigan action will not be "dispositive" of the Texas Litigation because that case involves many more patents, products, and parties. *Kahn*, not *Katz*, controls.

**2.    Finisar is Not the "True Defendant" in the Texas Litigation**

Finisar relies heavily on Judge Cleland's opinion in *Delphi Corp. v. Automotive Techs. Int'l, Inc.*, 2008 WL 294116 (E.D. Mich. 2008). (Dkt. #14 at 6-9.) In that opinion, Judge Cleland held "[a]t the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit." *Id.* at *4, *quoting Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977). The customer suit exception applied in the *Delphi* case because resolution with respect to the manufacturer would be "global" with respect to the customers named in the first-filed action. *Id.*



at *5.  That is not the case here.  As shown in the chart above, Finisar is not the "true defendant"

and the customer exception rule should not apply, just as in the *Kahn* case.  In *Delphi*, Judge

Cleland also noted that "[a]s a matter of judicial economy, global settlement is preferred over

piecemeal litigation."  *Id.*  Granting Finisar's motion will promote piecemeal litigation, not

prevent it.

### 3.      ROADMs are the Products at Issue, not Finisar's WSSs

Yet another reason the customer suit exception does not apply is because at least some of

the claims of the '661 and '479 patents common to the Texas Litigation are directly infringed by

only the ROADM makers – not Finisar.  *Teleconference Sys. v. Proctor & Gamble Pharms., Inc.,*

676 F.Supp.2d 321, 327, 329 (D. Del. 2009) (customer suit exception does not apply where

customers are the direct infringers and "a stay may lead to a duplicate trial which would result in

inefficient use of the court's time"); *In re Laughlin Prods., Inc.*, 265 F.Supp.2d 525, 537 (E.D.

Pa. 2003) ("[W]here the patentee alleges that the customers themselves directly infringed the

method or process disclosed in the patent, the customer suit exception does not apply.");  *A.P.T.,*

*Inc. v. Quad Envtl. Techs. Corp.*, 698 F.Supp. 718, 722 (N.D. Ill. 1988) (observing plaintiff had

separate interest in bringing suit against customers where patent at issue covered process because

customers themselves are alleged direct infringers and manufacturer could be liable only under

theories of contributory infringement or active inducement).

For example, various claims of the '479 patent recite elements including a "beam

splitter," an "add/drop multiplexer" and an "amplifier," which are found only in the ROADMs

made by Finisar's customers – not in the Finisar WSSs.  (Ex. 1, Cheetah's infringement charts

for '479 patent at pp. 15-18, 32.)   Those claims are directly infringed only by the Texas

defendants  – not by Finisar.  The same is true for various claims of the '661 patent, which also



recite an "add/drop multiplexer." (Ex. 1, Cheetah's infringement charts for '661 patent at pp. 60.) Finisar does not manufacture an "add/drop multiplexer" – the Texas defendants do.

### 4.    An Injunction in Michigan Would Undo the Progress Made in the Texas Litigation

Finally, the Texas Litigation is well underway. The complaint was filed in July 2011, the court has issued a stipulated scheduling order, and the parties are in the midst of discovery. They have answered interrogatories, produced documents, and subpoenaed non-parties for documents. In stark contrast, in the Michigan action the case has yet to begin – the parties have not yet held a Rule 26 conference.

Finisar offers no explanation for its long delays. Why didn't Finisar seek a declaratory judgment in 2009 when Cheetah sued Verizon? Why did Finisar wait five months after Cheetah sued the six defendants in the Texas Litigation before filing the present lawsuit? Why did Finisar wait almost **eight months** before asking this Court to enjoin Cheetah in the Texas Litigation? Finisar has no answers.

Enjoining Cheetah now would result in a tremendous waste of time and resources, and unduly prejudice Cheetah. *Transformation, Inc. v. Gay Eng'g & Sales Co.,* 336 F.Supp. 959, 960 (S.D. Tex. 1971) ("The litigation, pending in this court for a year, has progressed to a stage at which it would be both burdensome and unfair to allow defendant to effect delay on account of a case less than two months old.") The relief Finisar seeks *will not* result in a reduction of the products or parties at issue in the Texas Litigation, *will* result in the unnecessary duplication of litigation, and *will* prejudice Cheetah's right to pursue its direct infringement claims against Finisar's customers on the '661 and '479 patents at issue here. Thus, the "first-filed rule" applies and the customer suit exception does not.



Finisar's claims of "forum shopping" by Cheetah are unfounded.   Cheetah is a Texas limited liability company.  Each of the Texas defendants is physically located in Texas, with the exception of Tellabs:[3]

- Alcatel-Lucent – Plano, Texas

- Ciena – Richardson, Texas

- Fujitsu – Richardson, Texas

- Nokia Siemens – Kenwille, Texas

- FutureWei – Plano, Texas

None of the defendants in the Texas Litigation has moved to transfer venue.  Finisar, not Cheetah, is forum shopping.

**5.      Finisar has Not Met Its Burden to Show that an Injunction is Proper**

Finisar does not discuss the four factors[4] needed for entry of an injunction under *eBay Inc. v. MercExchange, L.L.C.*, 126 S.Ct. 1837 (2006), so its motion must fail for that reason as well.   Citing *Katz*, Finisar asserts that the four factors are not relevant "in a customer suit exception context."  (Finisar Brief at 10.)   But *Katz* was decided in 1990, long before the Supreme Court reversed the Federal Circuit in *eBay*.  Importantly, the Supreme Court expressly

---

[3] Tellabs had a central role in the Verizon Litigation and trial.  Tellabs did not file a declaratory judgment action against Cheetah or move to stay the Verizon Litigation (or the Texas Litigation).

[4] "A plaintiff must demonstrate:  (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 126 S.Ct. at 1839.  Those factor are required for a permanent injunction.  For a preliminary injunction, the first factor becomes a "reasonable likelihood of success on the merits."  *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1374 (Fed. Cir. 2006).



rejected such categorical rules that fail to consider all four factors.  *eBay*, 126 S. Ct. at 1840.

Finisar's failure to address all injunction factors dooms its motion.

**B.      Claim Construction and Summary Judgment Motion Will Run
         Afoul of the Texas Litigation**

Independent of its request for injunction, Finisar seeks *leave* to file a summary judgment

motion of non-infringement and engage in early claim construction.  Note that Finisar has not

actually moved for summary judgment and Cheetah, here, does not respond on the merits to such

a motion.  Cheetah's arguments merely address why *leave* should not be granted.

Finisar ignores that its customers in the Texas Litigation have agreed to, and the district

court has entered, a calendar for (i) construing claim terms of the patents-in-suit in the Texas

Litigation, and (ii) summary judgment briefing.  (Ex. 2, Docket Control Order.)  No Texas

defendant – Finisar's customers – has said that they or the Texas Litigation would benefit by an

early summary judgment motion or claim construction.

If this Court were to grant Finisar's motion for leave, two courts would be construing the

same terms of the same patents, and ruling on summary judgment, in parallel lawsuits.  That

approach <u>undermines</u> principles of judicial efficiency, not the other way around.  District Judge

Steeh explained the importance of uniform claim construction:

> Considering the importance of uniform claim construction in patent cases, the
> court is aware that a transfer of venue to a forum where a prior lawsuit is pending
> may be appropriate if the two lawsuits involve the same facts, transactions, or
> occurrences. *Data Treasury*, 243 F.Supp.2d at 595.

*Sun Pharm. Indus. Ltd. v. Eli Lilly & Co.*, 2008 WL 1902111 at *5 (E.D. Mich. Apr. 30, 2008).

In *Data Treasury*, the court held:

> Having two different courts interpret the same patent claims would risk
> inconsistent claim construction rulings which, in turn, would promote uncertainty
> and impede the administration of justice. This untenable prospect favors resolving
> related patent cases in the same forum whenever possible.



*Data Treasury Corp. v. First Data Corp.,* 243 F. Supp.2d 591, 595-96 (N.D. Tex. 2003).

Furthermore, Finisar's request for an early summary judgment decision on infringement ignores that infringement is a fact question, *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995), and Cheetah has had no fact discovery from Finisar in the present case. Finisar has produced no documents disclosing the "LCoS technology" referred to in the Complaint. (*See e.g.*, Dkt #1, Complaint ¶ 15.) Cheetah has subpoenaed such information from Finisar in the Texas Litigation (Exhibit 3), but, to date, Finisar has refused to provide it (Exhibit 4). This is another reason why summary judgment is inappropriate at this time.

Cheetah does not address the merits of Finisar's proposed claim constructions and request for summary judgment because this Court has not granted Finisar's motion for leave to brief those issues. The following excerpts from Finisar's documents confirm that Finisar products practice the two '479 patent claim terms at issue. For example, Finisar claims that its WSSs lack a "variable blazed grating" because they "do not do not include a **grating** that is '**blazed'** and also that is '**variable**.'" (Dkt. #14 at 14-16, emphasis added.) But Finisar's published "White Paper," describing the WSSs at issue, says the opposite:

> [T]he LCoS is used to control the phase of light at each pixel to produce an electronically programmable grating. This can control the beam deflection in a vertical direction by **<u>varying</u>** either the pitch or **<u>blaze</u>** of the **<u>grating</u>** . . . .

(Ex. 5, Finisar White Paper at 2.)

With respect to the '661 patent, Finisar argues that its WSSs lack a "stratum between reflective stacks." (Dkt. #14 at 14.) This position is contrary to the evidence Finisar provided for trial in the *Verizon* lawsuit. There, Finisar produced a schematic for individual pixels in the WSSs at issue, referring to each pixel as a "pixel **<u>stack-up</u>**." (Ex. 6, 3/15/11 Trial Tr. at 112-113, emphasis added.)



Thus, Finisar own documents raise serious fact questions that must be investigated before the Court can entertain a summary judgment motion.  The Court should deny Finisar's motion for leave.

### III.    CONCLUSION

For the above reasons, the Court should deny Finisar's motion for preliminary injunction and for leave to file an early summary judgment motion.  Instead, as discussed in this Brief, and in Cheetah's co-pending Motions to Dismiss, this Court should dismiss Finisar's declaratory judgment Complaint.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

Dated:  <u>March 26, 2012</u>

   /s/  Thomas A. Lewry
Thomas A. Lewry      (P36399)
John S. LeRoy          (P61964)
Christopher C. Smith  (P73936)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone:  (248) 358-4400
Facsimile:   (248) 358-3351
Email: tlewry@brookskushman.com
        jleroy@brookskushman.com
        csmith@brookskushman.com

*Attorneys for Defendant*

13



## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on March 26, 2012, I electronically filed the foregoing **CHEETAH OMNI, LLC'S BRIEF IN OPPOSITION TO FINISAR CORPORATION'S MOTION FOR INJUNCTION OF CHEETAH OMNI'S PENDING CLAIMS AGAINST FINISAR'S CUSTOMERS AND FOR LEAVE TO FILE A SUMMARY JUDGMENT MOTION** with the Clerk of the Court for the Eastern District of Michigan using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing: jonsteiger@quinnemanuel.com; palizzi@millercanfield.com; simoni@millercanfield.com; tlewry@brookskushman.com; jleroy@brookskushman.com; csmith@brookskushman.com.

I also certify that I have mailed by United States Postal Service the paper to the following non-participants in the ECF System:  NONE.

**BROOKS KUSHMAN P.C.**

  /s/  Thomas A. Lewry
Thomas A. Lewry      (P36399)
John S. LeRoy        (P61964)
Christopher C. Smith  (P73936)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone:  (248) 358-4400
Facsimile:   (248) 358-3351
Email: tlewry@brookskushman.com
        jleroy@brookskushman.com
        csmith@brookskushman.com

*Attorneys for Defendant*

