UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FINISAR CORPORATION,

               Plaintiff,                          CIVIL ACTION NO. 2:11-cv-15625

v.                                      Honorable District Judge Paul D. Borman

CHEETAH OMNI, LLC,

               Defendant.

---

**REPLY IN SUPPORT OF FINISAR CORPORATION'S MOTION FOR INJUNCTION OF
CHEETAH OMNI, LLC'S CO-PENDING CLAIMS AGAINST FINISAR'S CUSTOMERS AND
FOR A LEAVE TO FILE A SUMMARY JUDGMENT MOTION**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ...................................................................................................... 1

    1.    The Present Motions Focus Discretely on the Claims Asserted Solely Against Devices Incorporating Finisar's Optical Switch, Without An Overlap with Other Claims or Issues in Texas, and Therefore Promote Efficiency ........................................... 1

    2.    The Claims Implicating Finisar Are Directed at Switches, Not Their Boxes, Therefore Finisar Is an Accused Direct Infringer of Those Claims ..................................... 2

    3.    Cheetah's Reading and Application of the Governing Law Is Wrong ................................. 3

    4.    Cheetah's Response to Finisar's Motion for Leave to File a Summary Judgment Motion Underscores the Lack of Merit of Cheetah's Contentions ...................................... 5

III.    CONCLUSION ................................................................................................... 5

i

## TABLE OF AUTHORITIES

**Page**

### Cases

*Delphi Corp. v. Automotive Techs. Int'l, Inc.*,
  2008 WL 2941116 (E.D. Mich. Nov. 25, 2008) ................................................................. 2, 4

*Kahn v. General Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989) ....................................................................................... 3, 4

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990) ........................................................................................... 4

*Probatter Sports, LLC v. Joyner Techs., Inc.*,
  463 F. Supp. 2d 949 (N.D. Iowa 2006) ............................................................................... 5

I.      **INTRODUCTION**

Cheetah's portrayal of its claims implicating Finisar as being closely intertwined and overlapping with other claims and issues in the Texas Action is misleading.  In actuality, those claims constitute a very discrete and perfectly severable part of the Texas Action because they are asserted ***solely*** against devices incorporating Finisar's optical switch and are directed specifically at that switch.  Finisar's customers accused of infringement in the Texas Action (who are ***only a subset*** of Finisar's customers using the switch) merely provide a box for Finisar's switch, without adding any functionality relevant to the asserted claims.  Cheetah targets the customers because the royalties Cheetah hopes to collect would be much higher for the larger, more expensive boxes than for the switch those boxes carry.  As the manufacturer of the switch, Finisar is an accused direct infringer of those claims, and has the right to challenge Cheetah's allegations on behalf of itself and ***all*** of its customers in a declaratory judgment action.  Moreover, the discrete issues concerning Finisar's switch are simple and straightforward, and can be quickly resolved in this action, which – unlike the Texas Action – is unencumbered by a slew of unrelated defendants, unrelated accused products, and different patents.  Therefore, this case and the present motions will promote judicial efficiency.   Furthermore, Finisar's claims in this action have priority over Cheetah's claims in Texas, under the customer suit exception.  The purpose of this case and the present motions is to take advantage of the priority manufacturers are afforded, and put a quick end to Cheetah's present and future harassment of ***all*** Finisar's customers with respect to ***all*** relevant Finisar products, once and for all.

II.     **ARGUMENT**

1.      **The Present Motions Focus Discretely on the Claims Asserted Solely Against Devices Incorporating Finisar's Optical Switch, Without An Overlap with Other Claims or Issues in Texas, and Therefore Promote Efficiency**

Cheetah misleadingly portrays its claims against Finisar's customers as closely intertwined and overlapping with other claims and issues in the Texas Action.  Cheetah's chart and the discussion surrounding it in Cheetah's Response shed no light on any relevant issue.  *See* Dkt. # 22 at 5-6.  Cheetah's

infringement contentions, on the other hand, plainly show that *every* claim implicating Finisar is asserted *solely* against devices incorporating Finisar's optical switch. *See, e.g.*, Ex. A at 4-21, 55-71. **None** of those claims are asserted against any other company's switches. Cheetah asserts different patent claims against different products in Texas, and therefore Finisar's claim construction and non-infringement arguments would not overlap with those of Finisar's competitors. Thus, this Court's ruling on the discrete set of claims lodged exclusively against Finisar's switch would be judicially efficient, not duplicative of the Texas court's efforts.

    **2.**    **The Claims Implicating Finisar Are Directed at Switches, Not Their Boxes, Therefore Finisar Is an Accused Direct Infringer of Those Claims**

Cheetah mischaracterizes its own patents as being directed to the larger boxes sold by Finisar's customers, called ROADMs, and not the optical switches at the heart of those boxes. *See* Dkt. # 22 at 8-9. Even a cursory review of the patents and Cheetah's infringement contentions leaves no doubt that the inventions claimed in the '661 and '479 Patents are focused on an optical switch, a component of the boxes, and not the boxes themselves. The figures in the '479 Patent do not depict the boxes of Finisar's customers; rather, both the figures and the specification describe an optical switch. *See, e.g.*, '479 Patent, Figs. 1-6; Col. 4, l. 36 – Col. 11, l. 67. The claims of the '661 Patent are directed to a "tunable optical device," and even Cheetah admits that Finisar's optical switch is such a device. *See* Ex. A at 55. Indeed, for both these patents, Cheetah's entire direct infringement theory against the larger boxes incorporating Finisar's switches is built almost exclusively on Finisar's documents. *See* Ex. A at 4-21, 55-71. This is because the accused functionality of the boxes with Finisar's switches is manufactured exclusively by Finisar. Finisar's customers merely place the accused functionality in their boxes, without adding any additional functionality relevant to the asserted claims, much like the car manufacturers did with Delphi's airbag system in the *Delphi* case discussed in Finisar's opening brief. *See Delphi Corp. v. Automotive Techs. Int'l, Inc.*, 2008 WL 2941116 at *1 (E.D. Mich. Nov. 25, 2008). Therefore Finisar is without a doubt

an accused direct infringer of the claims asserted against the boxes with Finisar's switches.

The only conceivable reason for denying this and not asserting these patents directly against Finisar is that Finisar's optical switches are low cost compared to the larger boxes of Finisar's customers and therefore are a much less desirable target for royalties.  Cheetah itself bluntly points this out.  *See* Dkt. # 22 at 6-7.  To protect its lucrative business model, Cheetah has stooped to making statements not supported by any real facts.  In particular, in support of its argument that there is certain accused functionality that is "directly infringed by only the ROADM makers – not <u>Finisar</u>," Cheetah provides three "examples" that are simply wrong.  *See id.* at 8-9.  For example, Cheetah asserts that Finisar is not a direct infringer of claim 51 of the '479 Patent because Finisar's switch does not include a "beam splitter," and to give an appearance of support for this, cites to a single, isolated page from its infringement contentions. *See id.* at 8.  That particular claim, however, is dependent on claim 50 discussed on the pages immediately preceding the cited page 32, which make clear that both claims 50 and 51 are asserted against a device that does not include Finisar's switch, and thus not even at issue in this case.  *See* Ex. A at 22-31. Unfortunately, those pages were taken out of Cheetah's exhibit of its contentions.   For its two other "examples," Cheetah points to an allegedly missing "amplifier" and "add/drop multiplexer."  *See* Dkt. # 22 at 6.  Nonetheless, Finisar ***does*** in fact offer amplifiers with its switches, as evident from Finisar's brochure available on its web site.  *See* Ex. B at 4 ("Integrates WSS with EDFA [Erbium Doped Fiber Amplifier]"). Finisar's switch also includes "add/drop multiplexing" functionality.  *See id.* at 3, Fig. 4 ("The modules are available in multiple configurations including 9x1 or 4x1 (add) and 1x9 or 1x4 (drop) – see figure 4.").

As the manufacturer of the switches and an accused direct infringer of ***all*** Cheetah's claims implicating its products, Finisar should be given priority to defend against Cheetah's allegations, under the customer suit exception.

### 3.      Cheetah's Reading and Application of the Governing Law Is Wrong

Throughout its brief, Cheetah makes conclusory and inaccurate statements – such as "*Kahn*, not

3

*Katz*, controls" – regarding the governing case law.  *See, e.g.*, Dkt. #22 at 7.  Several of these inaccuracies, while fairly evident, should not go without correction.

The Federal Circuit's opinions in *Kahn* and *Katz* were both written by Judge Newman, and *Katz* followed *Kahn*, which has precedential implications Cheetah conveniently ignores.  *See Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989); *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990).  The appealed decision in *Kahn* concerned a motion for a stay of an entire case under the customer suit exception.  *Id*. at 1079.  The court reversed the stay, finding that the exception did not apply and explaining that Motorola, the plaintiff in the later-filed declaratory judgment action, was "not a manufacturer, user, or seller" of the accused component in the earlier-filed suit, and that even if the patent holder prevailed on the claims in the later-filed suit, he would have to re-litigate them against the defendant in the earlier-filed suit.  *Id*. at 1081-2.  The facts here are very different.  The injunction Finisar seeks would not stay the entire Texas Action, but rather would suspend only the discrete claims implicating Finisar.  Further, even Cheetah does not dispute that Finisar **is** the manufacturer of its optical switch.  Finally, this Court's decision on the claims at issue here would have a **global** and **final** effect **not only for the subset** of Finisar's customers in the Texas Action, but in fact **all** the customers of Finisar's switch.

Cheetah relies on two factors endorsed by *Kahn*: that the second action could not dispose of all the charges in the first action, and that the defendant in the first action did not agree to be bound by the decision in the second action.  *See* Dkt. #22 at 5-7.  However, Cheetah ignores that in her *Katz* opinion, which affirmed an injunction pursuant to the customer suit exception, Judge Newman revisited and expressly disregarded these two factors, making clear that the standard for the customer suit exception is more relaxed than it appeared in *Kahn*.  *Katz*, 909 F.2d at 1464.[1]

Cheetah also proclaims – without citing any authority – that the injunction standard outlined in *Katz*

---

[1] Recently, Judge Cleland followed *Katz* and applied the customer suit exception on the facts identical to the situation here, even though this resulted in two parallel litigations.  *See Delphi*, 2008 WL 2941116.

is no longer good law in the wake of the Supreme Court's decision in *eBay*.  *See* Dkt. #22 at 10-11.

Cheetah ignores post-*eBay* precedent that follows that injunction standard.  *See, e.g., Probatter Sports, LLC v. Joyner Techs., Inc.*, 463 F. Supp. 2d 949 (N.D. Iowa 2006).

### 4.   Cheetah's Response to Finisar's Motion for Leave to File a Summary Judgment Motion Underscores the Lack of Merit of Cheetah's Contentions

Cheetah "does not address the merits of Finisar's proposed claim constructions and request for summary judgment."  *See* Dkt. #22 at 12.  Instead, Cheetah asserts that Finisar "refused to provide" discovery.[2]  *See id.* at 12.  However, Finisar could not have refused discovery in this case because it commenced only a few hours before this reply was filed.  *See* Dkt. # 25.  Even though Finisar believes discovery is unnecessary here because, upon construing two terms, the Court will be able to dispose of the case as a matter of law, Finisar will work with Cheetah to complete discovery on expedited basis.

Finally, Cheetah's arguments regarding "cavities" and "variable blazed grating," based on soundbites taken out of context from Finisar's documents, illustrate how the Court's construction of these terms would effectively dispose of the entire case.  Relying on the patents at issue, Finisar has proposed constructions for the terms "cavity" and "variable blazed grating."  With these terms construed, Cheetah simply will not be able to explain how the documents it cites out of context could possibly show these elements in Finisar's switch.

## III.   CONCLUSION

For the reasons stated above and in Finisar's opening brief, Finisar respectfully requests that the Court grant its motions for injunction and leave to file a motion for summary judgment.

DATED:      April 16, 2012                            Respectfully submitted,

By:     s/ A. Michael Palizzi

---

[2] Cheetah subpoenaed Finisar in connection with the Texas Action.  Finisar explained to Cheetah in a meet and confer that "the documents Cheetah seeks in the Subpoena would be expected to be produced in [this case]," and that Finisar "will stand by with respect to the Subpoena until Cheetah is willing to engage in substantive discussion."  *See* Ex. C.  Since that discussion three months ago, Cheetah has not sought to enforce the subpoena.

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have appeared in this matter are being served with a copy of this document, and an expert declaration referenced therein, via the Court's CM/ECF system, U.S. Mail, and email on April 16, 2012.

<u>  s/ A. Michael Palizzi</u>