UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FINISAR CORPORATION,

        Plaintiff,                  CASE NO. 11-15625

v.                                   PAUL D. BORMAN
                                    UNITED STATES DISTRICT JUDGE

CHEETAH OMNI LLC,

        Defendant.
_____/

## ORDER
## DENYING DEFENDANT CHEETAH OMNI LLC'S MOTION FOR ORDER
## (1) DECLINING DECLARATORY JUDGMENT JURISDICTION
## (2) STAYING THIS ACTION OR TRANSFERRING IT TO THE
## EASTERN DISTRICT OF TEXAS (Dkt. #23)

On March 26, 2012, Defendant Cheetah Omni LLC (hereinafter Cheetah) filed the instant Motion. Thereafter, Plaintiff Finisar filed a Response and Defendant filed a Reply. Pursuant to Local Rule 7.1(f)(2) – the Court concludes that the briefing is fully informative, and that oral argument is not necessary.

Defendant's Statement of Material Facts starts on a slippery slope:

> 1. The first-filed lawsuit was the Texas action, *Cheetah Omni LLC v. Alcatel-Lucent USA Ins., et al*, Case No. 6:11-cv-390, United States District Court for the Eastern District of Texas, filed July 29, 2011 ("the Texas action").

Defendant's Brief in Support P.1.

This is a <u>misstatement</u> of a material fact. Plaintiff filed two earlier cases in the Eastern District of Michigan on the same day, less than two months before – and then dismissed them, without prejudice. *Cheetah v. Tellabs*, No. 11-12429 (E.D.Mich. filed June 3, 2011) (Roberts, J.)

1

and *Cheetah v. Fujitsu*, No. 11-12427 (E.D.Mich. filed June 3, 2011) (Steeh, J.) were both filed June 3, 2011. Thus, Cheetah's denomination of the Texas lawsuit against defendants, Tellabs and Fujitsu, and others, was not the "first filed."

As to why Cheetah filed the Detroit lawsuits, assigned by blind-draw to two of my colleagues, and then abruptly dismissed them, the undersigned can only lift his eyebrows, and the reader can only surmise.[1]

Similarly, as to why Defendant Cheetah, with its Eastern District of Michigan-based CEO and Founder, University of Michigan Professor Mohammed Islam, and its similarly Michigan-based principal law firm Brooks Kushman, LLC, scooted down to the Eastern District of Texas to file on July 29, 2011, there appears to be a pattern – think lyrics from Texas-based ZZ Top's song "LaGrange": "And you know what I'm talkin' about."

Plaintiff Finisar filed the instant Complaint in the Eastern District of Michigan on December 23, 2011 seeking a declaratory judgment against Cheetah of non-infringement and invalidity of four United States Patents: 6,888,661 ("the '661 patent"); 6,847,479 ("the '479 patent"); 6,445,502 ("the '502 patent"); and 6,721,473 ("the '473 patent").

The '661 patent and the '479 patent are asserted in the Texas action against Finisar's customers. Finisar Response, P. 6.  While the '502 patent and the '473 patent have never been involved in litigation, Plaintiff Finisar contends they are relevant to the two patents common in both the Detroit and the Texas lawsuits, '661 and '479.

Finisar contends that the relevant Cheetah claims point to the accused Finisar device – an

---

[1] Think lyrics from the song titled "What's Going On" by the 4 Non Blondes: "So I wake in the morning and I step outside and I take a deep breath . . . and I scream from the top of my lungs, What's goin' on . . ."

2

optical switch – which is contained, with other wares in a bigger and more expensive "box" utilized by Finisar customers. The boxes that carry Finisar's switch are called Reconfigurable Optical Add/Drop Multiplexers (ROADMs). Finisar Response, Pp.1 & 4. Finisar alleges that "Finisar's accused switch [is] at the heart of these boxes. . . ." *Id.* at 2.

Plaintiff Finisar alleges that Defendant has filed multiple patent infringement actions in Federal District Court, three of which "involved the patents at issue in this action or related patents." *Id.* at 3.

Plaintiff further alleges that Defendant "Cheetah has a pattern of pursuing customers of Finisar's optical switch through patent litigation, at the same time avoiding direct confrontation with Finisar." *Id.* at 3. Plaintiff alleges that "Cheetah's infringement allegations against Finisar's switch are lodged against Tellabs, Alcatel, Fujitsu, Nokia and Futurenei, who manufacture the boxes call ROADMs, that carry Finisar's switch." *Id.* at 4.

As to its standing to file the instant declaratory action, Plaintiff Finisar alleges that "Finisar's customers in the Texas Action have demanded that Finisar indemnify and defend them against Cheetah's claims." *Id.* at 4.

Plaintiff Finisar contends that the instant declaratory judgment action trumps Cheetah's Texas claims against Finisar's customers, under the "customer suit" exception, and that this exception permits case or controversy jurisdiction of claims involving unasserted patents related to an asserted patent.

Finisar contends that "Cheetah's Claims Against Finisar's Customers in Texas Are All Directed To Optical Switches, Not the Boxes They Come In." *Id.* at 5, and that the '479 patent is a continuation of the '502 patent, and the '502 patent is related to the '473 patent. *Id.* at 8.

Plaintiff asserts that these are VBG[2] patents that share identical drawings and almost identical specification and have a similar title.

Because Plaintiff Finisar alleges that it has been asked to indemnify its customers for claims Defendant Cheetah has asserted against them, it cites as legal support for this declaratory judgment action, the "customer suit" exception noted in the Federal Circuit decision, *Arris Group, Inc. v. British Telecomms, PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011):

> We have recognized that, where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributor infringement based on the alleged acts of direct infringement by its customers.

*Arris* (emphasis added), cites to *ABB Inc. v. Cooper Indus. LLC*, 635 F.3d 1345, 1347-48 (Fed. Cir. 2011).

Cheetah's argument against Finisar's "customer suit", cites to the Supreme Court opinion in *MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764 (2007). This Court does not agree with Cheetah's interpretation of *MedImmune*. The Supreme Court noted that the text of the Declaratory Judgment Act confers on federal district courts unique and substantial discretion whether to declare the rights of litigants. *Id.* at 776. This District Court chooses to exercise its discretion to proceed with this action.

This Court notes that the Federal Circuit conceded in *Arris Group* at 1373, that "the Supreme Court rejected our prior, more stringent standard for declaratory judgment standing

---

[2] VBG stands for "variable blazed grating" which describes what Plaintiff claims is an element central to the patents and to the dispute between Cheetah and Finisar.

insofar as it required a 'reasonable apprehension of imminent suit'", and created a new standard:

> Under the Court's new standard, an Article III case or controversy exists when "the facts alleged, under all the circumstances, show there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Arris* at 1373, (citation omitted). This Court finds that the facts here support Plaintiff's filing of the instant Complaint seeking a declaratory judgment under the "customer suit" exception.

Finally, the Court concludes that the instant case should not be transferred to the Eastern District of Texas under 28 U.S.C. § 1404(a).

Transfer does not serve the interests of justice. Cheetah had the opportunity to name Finisar to the Texas action, but did not so chose. Further, transferring is not in the convenience of Cheetah's witnesses and parties – Cheetah's founder, main officer and the principal inventor of each of the patents at issue, Professor Islam resides and works in this district. So, in reality, Defendant Cheetah's principal place of business, as recently defined by the Supreme Court, is here:

> [W]e conclude that the phrase "principal place of business" refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.

*Hertz Corporation v. Friend*, 130 S.Ct. 1181, 1186 (2010).

In addition to the presence of the Professor Islam in Ann Arbor, the Court also notes that Defendant Cheetah's principal attorneys that signed the briefs in this case and in the Texas case: Brooks Kushman P.C., Thomas Lewry, John LeRoy, and Christopher Smith, are located in Southfield, Michigan.

Accordingly, the Court denies Defendant Cheetah Omni LLC's Motion for Order (1)

Declining Declaratory Judgment Jurisdiction, and also (2) Declines to Stay This Action or Transfer it to the Eastern District of Texas.

SO ORDERED.

DATED: 7-5-12

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE